IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

ALBUQUERQUE POLICE OFFICERS'
ASSOCIATION,

       Plaintiff,

v.                                   No. CIV 15–149 JAP/KBM

CITY OF ALBUQUERQUE,

       Defendant.


**MEMORANDUM OPINION AND ORDER**

On May 11, 2015, Defendant City of Albuquerque (City) filed an OPPOSED MOTION

AND MEMORANDUM TO CONSOLIDATE WITH *UNITED STATES OF AMERICA v. CITY*

*OF ALBUQUERQUE,* 1:14-cv-01025 RB/[KK] (Motion to Consolidate) (Doc. No. 12). The

Motion argues that common questions of law and fact exist in this case, assigned to the

undersigned Senior District Court Judge James A. Parker (2015 lawsuit), and *United States v.*

*City of Albuquerque*, assigned to District Court Judge Robert C. Brack (2014 lawsuit). In

ALBUQUERQUE POLICE OFFICERS' ASSOCIATION'S (APOA) RESPONSE TO CITY OF

ALBUQUERQUE'S OPPOSED MOTION AND MEMORANDUM TO CONSOLIDATE

WITH *UNITED STATES OF AMERICA v. CITY OF ALBUQUERQUE,* 1:14-cv-01025 RB/KK

[Doc. 12] (Response to Motion to Consolidate) (Doc. No. 16), the APOA asks the Court to

exercise its discretion and deny the consolidation request because any commonality of questions

of law or fact in the two cases is "almost non-existent." The CITY OF ALBUQUERQUE'S

REPLY SUPPORTING MOTION TO CONSOLIDATE (Reply) (Doc. No. 23) proposes that

"[t]here are serious issue preclusion difficulties with the APOA pursuing separate claims [in the

1

two lawsuit] arising out of the same factual circumstances, while at the same time opposing consolidation." Reply at 2.

On June 5, 2015 the United States filed a STATEMENT OF INTEREST OF THE UNITED STATES REGARDING CITY OF ALBUQUERQUE'S MOTION TO CONSOLIDATE (DOC. 12) (Statement) (Doc. No. 19), indicating that while not a party to the 2015 lawsuit, it concurs in the City's request for consolidation.

When the City filed its Motion to Consolidate, it also filed a separate OPPOSED MOTION TO STAY PENDING DECISION ON MOTION TO CONSOLIDATE (Motion to Stay) (Doc. No. 13). The APOA opposes the City's Motion to Stay. ALBUQUERQUE POLICE OFFICERS' ASSOCIATION'S RESPONSE TO CITY OF ALBUQUERQUE'S MOTION IN OPPOSITION TO A STAY [Doc. 13] (Response to Motion to Stay) (Doc. No. 15). In its REPLY SUPPORTING OPPOSED MOTION TO STAY PENDING DECISION ON MOTION TO CONSOLIDATE [Doc. 12] (Reply to Motion to Stay) (Doc. No. 20), the City argues that numerous factors weigh in favor of a stay and requests that the Court vacate the hearing scheduled on June 24, 2015 on the APOA's request for injunctive relief until the Court decides the City's Motion to Consolidate. Reply to Motion to Stay at 4–5.

### Procedural Background

I.     *United States v. City of Albuquerque v. APOA* (Intervenor),
       No. CIV 14-1025 RB/KK (2014 lawsuit)

On November 12, 2014, the United States filed a Complaint against the City of Albuquerque under the Violent Crime Control and Law Enforcement Act of 1994, alleging a pattern or practice of use of excessive force by Albuquerque Police Department (APD) officers. The United States sought declaratory and injunctive relief to remedy Defendant's alleged violations of constitutional and federal law and "to ensure that APD implements sustainable

reforms that will result in effective and constitutional policing." Complaint at 1. In support of its allegations that APD uses excessive force, the United States relied on extensive findings issued on April 10, 2014 by the Department of Justice. Doc. No. 1–1.

After five months of negotiation, the parties filed a comprehensive Settlement Agreement that sets up a framework for reform and a joint motion to approve the settlement. Doc. Nos. 9, 9–1. Doc. No. 9. On December 17, 2014, Judge Brack conditionally approved the Settlement Agreement but invited submission of amicus curiae briefs before granting final approval of the agreement. JOINT PROPOSED ORDER INVITING THE SUBMISSION OF BRIEFS BY AMICUS CURIAE (Doc. No. 35). The Albuquerque Police Officers' Association (APOA), Plaintiff in the 2015 lawsuit, filed amicus briefs to advance its arguments. Motion to Consolidate at 2. Judge Brack set a hearing so that interested parties could present their positions. Doc. 9 at 2.

On January 21, 2015, Judge Brack conducted a 3½ hour hearing at which seven groups, representing various interests in the community, presented arguments. Doc. Nos. 90, 91. At the January 21 hearing, Judge Brack heard from potential intervenors, including the APOA. Judge Brack determined that the APOA could intervene as a matter of right but denied other concerned citizens' requests to intervene. Doc. No. 102. Judge Brack required the APOA to file formal objections to the Settlement Agreement, which it did on March 5, 2015. Doc. No. 105. In April 2015, the City and the United States each filed responses to the APOA's objections, and in early May 2015, the APOA filed replies to the responses. Doc. Nos. 119, 124, 126, 127.

On June 2, 2015, Judge Brack issued a MEMORANDUM OPINION AND ORDER (Doc. No. 134) approving the Settlement Agreement. In a thorough and well-reasoned opinion, Judge Brack addressed each of the APOA's objections before overruling them and concluding that the Settlement Agreement would be approved.

In the June 2015 Order, Judge Brack observed that one of intervenor APOA's objections challenged the Albuquerque City Ordinance that created the Civilian Policy Oversight Agency. Judge Brack noted, however, that the APOA had filed a separate lawsuit challenging the Ordinance under principles of constitutional and labor law. Doc. 134 at 20. Judge Brack stated:

> Previously, [the APOA] challenged the Ordinance before the Albuquerque Labor Management Relations Board (CBA § 20.1.19.) Along the same lines, [the APOA] objects to portions of the [Settlement] Agreement which refer to the Civilian Policy Oversight Agency and its ability to investigate misconduct. (Doc. 105 at 7.) However, these objections are more appropriately directed at the Ordinance, not the [Settlement] Agreement. (Doc. 124 at 19.) The legality of the Ordinance is beyond the scope of this litigation. [2014 lawsuit.]

*Id.* Thus, Judge Brack did not take up the issue of the legality of the Ordinance, which he considered to be the subject of the APOA's separate proceeding against the City (2015 lawsuit).

After approving the Settlement Agreement, Judge Brack now retains jurisdiction to enforce the provisions of the Settlement Agreement (Consent Decree). As part of the Court's oversight responsibilities, Judge Brack requires the parties and the monitor to appear at annual hearings to report on the City's progress in substantially complying with the terms of the Consent Decree. Doc. 134 at 30.

II.     *APOA v. City of Albuquerque*,
        No. CIV 15-149 JP/KBM (2015 lawsuit)

On February 6, 2015, the APOA filed a COMPLAINT FOR DECLARATORY JUDGMENT (Doc. No. 1-1) (Complaint) and a VERIFIED PETITION FOR PRELIMINARY INJUNCTION (Doc. No. 1-5) (Petition for Preliminary Injunction) in the Second Judicial District Court in the County of Bernalillo (2015 lawsuit). The Complaint asks for a declaratory judgment holding that provisions of the Civilian Police Oversight Agency Ordinance are invalid. Complaint at 6. The Petition for Preliminary Injunction requests "a preliminary injunction

enjoining the enforcement and effectiveness of [] certain provisions of the Civilian Police

Oversight Agency Ordinance [] concerning the disclosure of any information from an officer's

Internal Affairs file pending final disposition of this action on its merits.") Petition for

Preliminary Injunction ¶ 1.

On February 3, 2015, the City answered APOA's Complaint for Declaratory Judgment,

Doc. No. 4. On February 20, 2015 Defendant City of Albuquerque (City) removed the 2015

lawsuit to federal court. Doc. No. 1. On June 11, 2015, the City answered the Petition for

Preliminary Injunction, Doc. No. 22. The Court set a hearing on June 24, 2015 on APOA's

request for a preliminary injunction.

For purposes of analyzing the City's Motion to Consolidate, the following allegations are

taken from the APOA's Complaint and the Petition for Preliminary Injunction. The APOA is

recognized as the "Exclusive Bargaining Agent" of "sworn certified police officers" working for

Defendant City of Albuquerque (City). Complaint ¶¶ 1, 2. A new collective bargaining

agreement (CBA) between the APOA and the City, finalized on July 12, 2014, contains

provisions regarding the Police Oversight Commission's (Commission) and the Police Oversight

Ordinance (POC). The provisions in the July 12, 2014 CBA are similar to provisions that

previous versions of the CBA had contained since 2000. The specific sections of the CBA at

issue concern the imposition of discipline for police misconduct, the Commission's powers to

conduct investigations into alleged police misconduct, and the disclosure of police officers'

compelled statements. *See* Complaint ¶¶13–15, 18.

The APOA claims that the City was working on a new ordinance to replace the POC

when the parties were negotiating the terms of the July 2014 CBA, but that the City acted in bad

faith by not trying to negotiate the terms of the new ordinance into the July 2014 CBA.

Complaint ¶¶ 16, 17, 27. On October 6, 2014, the City's Mayor signed the New Ordinance[1] into effect. *Id.* ¶ 19. The APOA alleges that certain sections of the New Ordinance violate the July 2014 CBA, "contradict and violate existing CBA provisions regarding Internal Affair procedures and the disclosure of information," and violate "numerous provisions of the CBA regarding the Commission's access to officer's (sic) Internal Affair[s] files and their immunized statements." *Id.*¶¶ 20–22.

In the Petition for Preliminary Injunction, the APOA argues that it "and member police officers will suffer irreparable harm if offending sections of the New Ordinance are allowed to remain in effect pending the final disposition of this matter." Petition for Preliminary Injunction ¶ 2. The APOA contends that the New Ordinance, unlike older versions of the POC Ordinance contained in CBAs, fails to promise that police officers' personnel information and compelled statements in Internal Affairs files will not be released. *Id.* ¶ 4. Older versions of the CBA, as well as the July 2014 CBA, state that "all compelled statements" of police officers to the Internal Affairs Department, also known as *Garrity* Statements, are confidential and can be accessed only by a limited number of people. Affidavit of Stephanie Lopez (Lopez Aff.) at ¶ 12 (Doc. No. 1-7). However, according to the APOA, if the New Ordinance remains in effect, the APOA will be unable to protect its member officers from the disclosure of "constitutionally protected information" as provided for in the CBA, and police officers will risk dissemination of information that could lead to their criminal prosecutions or destruction of their careers. *Id.* ¶¶ 4, 6. The APOA directs its request for injunctive relief at "only a selected provision of the [New O]rdinance regarding access to Internal Affairs files to include compelled statements." *Id.* ¶ 9.

---

[1] The APOA's Petition for Preliminary Injunction,¶ 1, identifies the New Ordinance as the "CPOA," but the APOA's Complaint refers to the new Commission, the Civilian Police Oversight Agency, also as the CPOA. Complaint at ¶ 19. *See* The APOA's Response to Motion to Stay ¶ 1 (identifying the "new civilian police oversight board" as CPOA). For purposes of clarity, the Court refers to the new Civilian Police Oversight Agency Ordinance as the "New Ordinance," and to the new Civilian Police Oversight Agency or Board as the New Oversight Board.

**Analysis**

I.      City's Motion to Consolidate the 2014 and 2015 Lawsuits (Doc. No. 12)

On May 11, 2015, the City filed the Motion to Consolidate in the 2015 lawsuit but did

not file the same Motion in the 2014 lawsuit. Doc. No. 12 (2015 lawsuit). On May 26, 2015, the

City filed a Notice in the 2014 lawsuit, indicating that it had filed the actual Motion to

Consolidate in the 2015 lawsuit. Doc. No. 133 in 2014 lawsuit.

It is unknown why the City did not file the present Motion to Consolidate in the 2014

lawsuit. This District's standard practice is to have the district judge assigned to the first-filed

proceeding decide a motion to consolidate. If consolidation is granted, the judge assigned to the

earlier-filed lawsuit will handle both proceedings and the first-filed lawsuit is typically

designated as the "lead" case. Indeed, the City recognizes that the "the first filed case generally

serves as the lead case" and requests that the 2014 lawsuit serve as the lead case in further

proceedings if the Court grants the Motion to Consolidate. Motion to Consolidate at 6. The City

also acknowledges that Judge Brack is already familiar with the issues and claims raised in the

2014 lawsuit. *Id.* However, because the City did not file the Motion to Consolidate in the 2014

lawsuit and only filed the Motion to Consolidate in the 2015 lawsuit, the undersigned District

Judge decides the Motion.

*A. Legal Standard*

Rule 42(a) provides that a court may consolidate cases "[i]f actions before the court

involve a common question of law or fact." Fed. R. Civ. P. 42(a). A court is vested with broad

discretion in deciding whether to consolidate actions. *Shump v. Balka*, 574 F.2d 1341, 1344 (10th

Cir. 1978). The purpose of Rule 42(a) is "to give the court broad discretion to decide how cases

on its docket are to be tried so that the business of the court may be dispatched with expedition

and economy while providing justice to the parties." WRIGHT & MILLER, 9A FEDERAL

PRACTICE & PROCEDURE: CIVIL (THIRD) § 2381 (2014). If the Court determines the two

actions involve a common question of law or fact, the Court then weighs the interest of judicial

convenience in consolidating the cases against the delay, confusion, and prejudice that

consolidation might cause. *The Servants of the Paraclete, Inc. v. Great American Ins. Co*., 866

F.Supp. 1560, 1572 (D.N.M. 1994). The party moving for consolidation bears the burden of

proving that consolidation is appropriate. *Id.*

    B.  *Parties' Positions*

In the Motion to Consolidate, the City argues that: 1) both lawsuits involve the same

parties; 2) the APOA's objections in the 2014 lawsuit "are similar to[] and arise from the same

common nucleus of operative fact that is the subject matter" of the 2015 lawsuit; and 3) the

Settlement Agreement is the central focus of both cases, i.e., the APOA's 2015 lawsuit

challenges the Settlement Agreement's terms regarding disciplinary actions of police officers,

including provisions related to the Commission and the POC. Motion to Consolidate at 2, 4.

According to the City, commonalities of legal and factual issues in both cases support

consolidation, and consolidation is consistent with the dictates of judicial economy, will

eliminate delay and confusion, will reduce costs to the parties, and will avoid inconsistent

rulings. *Id.* at 5. The City also asserts that if APOA is permitted to "re-litigate" the same issues

already raised and now addressed in the 2014 lawsuit, "all parties" will suffer prejudice. *Id.* at 7.

In its Reply, the City contends that there would be "serious issue preclusion difficulties"

if the Court does not allow consolidation. For example, the City represents that in the 2014

lawsuit, Judge Brack already has decided the identical issue presented by the APOA in this case.

*See* Reply at 3. The City first made the "issue preclusion" argument in its Reply and the Court

need not address it since the APOA did not have an opportunity to respond to it. *See Pippin v.*

*Burlington Res. Oil & Gas Co.*, 440 F.3d 1186, 1192 (10th Cir. 2006) (court need not address

new arguments raised in a reply with respect to summary judgment briefing). However, as

discussed below, Judge Brack expressly found that the APOA's challenge to the legality of the

New Ordinance was outside the scope of the 2014 lawsuit and that the APOA had raised that

issue in the 2015 lawsuit. Doc. No. 134 at 20. In other words, Judge Brack found that the two

cases do not raise "identical" issues. Thus, the issue preclusion argument, even if considered,

would not support consolidation.

Although the APOA does not dispute the City's summary of the chronological history

regarding the Settlement Agreement, the APOA argues that the "very comprehensive Settlement

agreement entered into between the City of Albuquerque and the United States was done without

consultation []or participation of the APOA, thus causing part of the problems which have arisen,

not only in the [2014 lawsuit], but these present proceedings." Response to Motion to

Consolidate at 1. During the five months of negotiating the Settlement Agreement, the parties to

the Settlement Agreement did not seek the APOA's involvement or participation. *Id.* at 4. The

APOA also observes that it filed the 2015 lawsuit in State District Court but that it was the City's

decision to remove the case to Federal District Court.

According to the APOA, the Settlement Agreement's provisions regarding the

development of a program by APD and the Civilian Police Oversight Agency to ensure the

Albuquerque community's awareness of procedures to make civilian complaints, Settlement

Agreement at ¶¶ 164–200 (Doc. No. 16–1), do not answer the discrete questions presented by the

2015 lawsuit. Several paragraphs of the Settlement Agreement do address APD officers'

compelled statements, protection of APD personnel's rights under the Fifth Amendment,

advisement to APD of their Fifth Amendment rights where there is a reasonable likelihood of a criminal investigation or prosecution, and the process for initiating a criminal investigation. *Id.* ¶¶ 186–189. However, those sections of the Settlement Agreement do not appear to address who may have access to compelled statements of police officers.

The APOA submits that these sections of the Settlement Agreement have nothing to do with the actual legislative process that created the New Ordinance, which is the basis of the 2015 lawsuit. Response to Motion to Consolidate at 2. Although the 2014 lawsuit includes references "to some internal operations of the [Civilian Police Oversight Agency] and its relationship with the police department, the Settlement Agreement does not describe, nor control, how the [Agency] is to conduct its operations, to include the contested issue here, full access to personal information and *Garrity* statements[]" and "whether or not the City [] can legally pass an ordinance, which is in complete violation" of the CBA. *Id.* at 3.

In sum, the APOA contends that the issues in the two lawsuits are not sufficiently similar to justify consolidation and that the Settlement Agreement that is the subject of the 2014 lawsuit does not address the specific issues raised in the 2015 lawsuit, e.g., 1) whether the City acted lawfully in passing the New Ordinance, the terms of which allegedly violate the existing CBA and 2) whether the City should be stopped from enforcing provisions of the New Ordinance that are in conflict with the CBA. *Id.* at 3. The APOA contends that to consolidate this "very simple matter" with the "long term ligation over the Settlement Agreement would prejudice the APOA on the basis of delay and would interfere with the quick resolution of "simple issues." *Id.* at 5–6.

C. *Discussion*

The 2015 lawsuit shares some common issues of fact with the 2014 lawsuit. For example, the Settlement Agreement in the 2014 lawsuit involves consideration of police officers'

compelled statements and development of protocols to protect APD personnel's rights under the

Fifth Amendment. Doc. No. 16–1, ¶ 186. APD officers' compelled statements and the effect of

their disclosure to certain agencies or individuals is at the heart of the APOA's concerns in the

2015 lawsuit. However, that does not end the inquiry in terms of whether consolidation is

appropriate. *See Servants of Paraclete*, 866 F. Supp. 1573 (if the cases involve a common

question of law or fact, the Court next weighs the interests of judicial convenience against the

delay, confusion, and prejudice that might result from consolidation).

Notwithstanding some common facts in the two cases, a number of factors militate

against consolidation. The 2014 lawsuit is much broader in scope than the 2015 lawsuit. The

2014 lawsuit addresses provisions of a 106-page Settlement Agreement that are "designed to

ensure police integrity, protect officer safety, and prevent the use of excessive force, including

unreasonable use of deadline force, by APD." Settlement Agreement (Introduction) (Doc. No. 9–

1). The 2014 lawsuit now involves Judge Brack's oversight of the City's and the United States'

effective implementation of scores of requirements, many of which are not at issue in the 2015

lawsuit. In contrast, the 2015 lawsuit asks this Court to rule on discrete legal issues, e.g., the

legality of the legislative process as it relates to the City's passage of the New Ordinance and the

creation of the New Oversight Board vis-à-vis requirements of the July 2014 CBA, and the effect

of the New Ordinance's alleged violations of provisions of the July 2014 CBA.

While it is of no import to the question of consolidation that some of the parties are not

the same in the two lawsuits, *see Servants of the Paraclete*, 866 F. Supp. at 1573, the parties in

these two cases request different relief. The Complaint in the 2014 lawsuit seeks to remedy an

alleged pattern and practice of excessive force by APD officers. The Petition for Injunctive

Relief asks for an injunction enjoining the enforcement of specific provisions of the New

Ordinance.

The City's argument that the APOA seeks similar relief in both cases is not persuasive.

The City asserts that the APOA wants to prohibit implementation of specific sections of the

Settlement Agreement that allegedly violate the CBA in the 2014 lawsuit. Motion to Consolidate

at 5. That is not quite accurate as the APOA challenges the legality of provisions of the New

Ordinance in this case as opposed to provisions of the Settlement Agreement. The City further

asserts that in the 2014 lawsuit, the APOA requests Judge Brack not to approve any part of the

Settlement Agreement that is in violation of the CBA. *Id.* Judge Brack already has approved the

Settlement Agreement in the 2014 lawsuit.

Judge Brack's recent decision in the 2014 lawsuit underscores the differences in the two

lawsuits. Judge Brack described one of the APOA's objections as a challenge to the legality of

the New Ordinance that created the New Oversight Board. Doc. No. 134 at 20. Significantly,

Judge Brack found that the legality of the New Ordinance was beyond the scope of the 2014

lawsuit, observing that the APOA had already filed a separate lawsuit involving questions of the

legality of the New Ordinance. *Id.* Thus, Judge Brack's message is clear: The 2015 lawsuit raises

legal questions that the 2014 lawsuit cannot answer.

Moreover, the two proceedings are at different stages. In the 2014 lawsuit, Judge Brack

heard arguments at a lengthy hearing, considered extensive briefing on the issues before

approving a comprehensive Settlement Agreement, and issued a detailed Memorandum Opinion

and Order. The 2014 lawsuit is now in the remedial stage, while the 2015 lawsuit has just begun.

There have been no hearings and no substantive motion practice in the 2015 lawsuit.

Consolidation of the two cases mostly likely would interfere with Judge Brack's oversight of the

Consent Decree in the 2014 lawsuit and delay proceedings in that case. Thus, consolidation would not necessarily conserve the Court's resources. *See Servants of Paraclete*, 866 F. Supp. at 1573 ("Federal courts have declined to consolidate cases involving common questions of law or fact where the cases were at different stages of preparedness for trial and where consolidation would delay the case ready for disposition.") (citations omitted).

The Court concludes that the City has not carried its burden of proving that consolidation is warranted under Rule 42(a) and exercises its broad discretion in denying the City's Motion to Consolidate.

II.     City's Motion to Stay Pending Decision on the Motion to Consolidate (Doc. No. 13)

Having concluded that the City's Motion to Consolidate will be denied, the Court will deny the City's Motion to Stay all proceedings in the 2015 lawsuit as moot. The hearing scheduled on June 24, 2015 at 1:30 p.m. will proceed.

IT IS THEREFORE ORDERED that:

1) The City's OPPOSED MOTION AND MEMORANDUM TO CONSOLIDATE WITH *UNITED STATES OF AMERICA v. CITY OF ALBUQUERQUE,* 1:14-cv-01025 RB/[KK] (Doc. No. 12) is DENIED; and

2) The City's OPPOSED MOTION TO STAY PENDING DECISION ON MOTION TO CONSOLIDATE (Doc. No. 13) is DENIED as moot.

_____
SENIOR UNITED STATES DISTRICT JUDGE